**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  August 17 2018**

Mary Ann Whipple
United States Bankruptcy Judge

<br>

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 17-31623 |
| | ) | |
| Gregory E. Mintz and | ) | Chapter 13 |
| Angela D. Mintz, | ) | |
| | ) | Adv. Pro. No. 17-3064 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Gregory E. Mintz, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CitiBank, NA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OF DECISION</u>

This adversary proceeding is before the court for decision after trial on Plaintiffs' complaint to avoid a mortgage and a judgment lien held by Defendant CitiBank, NA ("CitiBank").  Plaintiffs are the debtors in the underlying Chapter 13 case pending in this court.  Plaintiffs' first claim for relief seeks to avoid CitiBank's mortgage on their home under the authority of *Lane v. Western Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002).  Their second claim for relief seeks to avoid CitiBank's judicial lien on their home, which relates to the same underlying debt as the mortgage, pursuant to 11 U.S.C. §522(f).  The sole issue as to both claims as presented by the parties is the valuation of Plaintiffs' residential real estate.

The district court has jurisdiction over Plaintiffs' underlying Chapter 13  bankruptcy case and all

civil proceedings in it arising under Title 11, including this adversary proceeding. 28 U.S.C. § 1334(a) and (b). The Chapter 13 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. § 157(a) and General Order No.2012-7 entered by the United States District Court for the Northern District of Ohio. This proceeding is a core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(K).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiffs are entitled to judgment on their claims for avoidance of the mortgage and judgment lien held by CitiBank.

## FINDINGS OF FACT

There is no dispute that Wells Fargo Home Mortgage ("Wells Fargo") holds a first mortgage on Plaintiffs' home located at 183 Foxhill, Perrysburg, Ohio, ("the Foxhill Property")[1] in the amount of $147,638.51, and that CitiBank holds a second mortgage on their home. And there is no dispute that CitiBank also obtained a judgment for the purpose of garnishing Plaintiffs' wages and holds a judgment lien on the Foxhill Property in the amount of $48,471.00 that is filed in the Wood County, Ohio, Court of Common Pleas under Case Number 2010JL0509 and that secures the same debt as the mortgage debt owed to CitiBank by Plaintiffs. [See Doc. # 1, Complaint, ¶ 4; Doc. # 6, Answer, ¶ 4].[2] Plaintiffs own the Foxhill Property jointly pursuant to a survivorship tenancy deed. [Pl. Ex 3].

Plaintiffs filed their petition for relief under Chapter 13 of the Bankruptcy Code on May 24, 2017. Their Chapter 13 plan provides that CitiBank's liens "shall be avoided pursuant to 11 U.S.C. §522(f), § 506 (*In re Lane),* or other applicable sections of the Bankruptcy Code." [Case No. 17-31623, Doc. # 7, p.4]. Plaintiff's Chapter 13 plan was confirmed on October 13, 2017. [*Id.*, Doc. # 38]. Hence, the instant action

---

[1] A June 19, 2018, filing appearing on the docket and the claims register in the underlying Chapter 13 Case No. 17-31623 show that Wells Fargo's claim has been transferred. The claim transfer has no effect on this proceeding.

[2] The court takes judicial notice of the contents of its case docket and the Plaintiffs' bankruptcy schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder,* 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

to avoid CitiBank's mortgage and judgment lien.

At trial, Plaintiffs and CitiBank both offered the testimony of their respective appraiser regarding valuation of the Foxhill Property. Both appraisers made a personal inspection of the property. Robert C. Hunt testified on behalf of Plaintiffs. In addition to an extensive background in real estate appraisal services, Hunt had also rehabilitated over one hundred homes a year for twenty years. The court credits Hunt's testimony that he is familiar with the costs to do so. Considering four comparable properties sold between December 28, 2015, and March 21, 2017, Hunt opined the market value of the Foxhill Property as of November 22, 2017, to be $121,175.00. [Pl. Ex. 1, unnumbered p. 3].

Hunt's valuation is based on the average sale price per square foot of the comparable properties times the square footage of the Foxhill Property (2,013 sq. ft. x 75.00), which equals $150,975.00, less repairs that he estimates will total $29,800.00. [*See id.*]. Hunt testified that the house was built in 1977 and has the original windows, the seal of which is broken on most of the windows. He further testified that two bedrooms have yellow stains on the ceiling that could be from animal feces and urine seeping through from the attic, although he did not go into the attic; that the carpet, which CitiBank's appraiser stated is at least fourteen years old, "is shot" and is beyond normal wear; that the air conditioning is inoperable; that a visual inspection of the roof shows that it is worn out; that the wall paint is filthy and worn; that the asphalt driveway was deteriorated, breaking up and flaking; that three fans are inoperable; that soffits below the roof are damaged or missing; and that there is trash and clothes in every room of the house. The $29,800.00 repair cost includes Hunt's estimated cost to correct all of the above items and includes, among other things, $2,000.00 to correct/repair the soffits, $4,000.00 for a new roof, $3,500.00 for new carpeting, and $2,000.00 to replace the air conditioning unit.

CitiBank's appraiser, Thomas Dalton, has been an Ohio certified residential appraiser since 1998. Using a sales comparison approach, Dalton compared three comparable properties that had been sold within twelve months of his February 2018 appraisal, which he testified is typically the time within which the comparable sales should occur unless the property being appraised is "unique property." Dalton adjusted the sale prices of the comparable properties for differences from the Foxhill Property in overall condition of the property, square footage, number of bathrooms, and the existence of a fireplace. He also estimated the cost to repair or replace the soffit and the air conditioning unit at the Foxhill Property at $3,000.00 and deducted that amount from the adjusted sale price of each of the three comparable properties, which resulted in a range of adjusted sale prices from $155,500.00 to $158,200.00. Dalton testified that he did not view

3

the roof of the Foxhill Property since it was covered with snow at the time of his inspection and that there had been an extensive fire at the house approximately fourteen years ago, after which the kitchen, bathrooms and doors had been replaced. He further testified that the house was unkempt, the walls show typical wear for fourteen year-old paint, and the carpet showed typical wear and tear for a fourteen year old carpet. Dalton opined the market value of the Foxhill Property as of February 6, 2018, to be $156,000.00. [Def. Ex. A, p. 2].

## LAW AND ANALYSIS

### I. Avoidance of Second Mortgage

Plaintiffs seek to strip off CitiBank's second mortgage on their home as wholly unsupported by any equity in the property under the authority of *Lane v. Western Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002). In *Lane,* the Sixth Circuit Court of Appeals addressed the interplay between 11 U.S.C. §§ 506(a) and 1322(b)(2). *Id.* at 665-69.

Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims. . . ." 11 U.S.C. § 1322(b)(2). The Sixth Circuit explained that whether a lien claimant is the holder of a 'secured claim' or an 'unsecured claim' depends on whether the claimant's security interest has any actual value as determined under § 506(a). *Lane*, 280 F.3d at 669; *see Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 328 (1993) (recognizing that a valuation of collateral under § 506(a) is the starting point in a § 1322(b)(2) analysis). Section 506(a) provides that a claim secured by a lien on property of the estate "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property" and "is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1).

Thus, "[i]f a claimant's lien on the debtor's homestead has a positive value, no matter how small in relation to the total claim, the claimant holds a 'secured claim' and the claimant's contractual rights under the loan documents are not subject to modification by the Chapter 13 plan." *Lane*, 280 F.3d at 669. However, "[i]f a claimant's lien on the debtor's homestead has no value at all, . . . the claimant holds an 'unsecured claim' and the claimant's contractual rights are subject to modification by the plan." *Id.* Recognizing that the "'secured claim/unsecured claim' touchstone may seem arbitrary . . . especially where the assignment of value *vel non* presents a close question of fact," the Sixth Circuit stated that it "holds no warrant to cleanse the United States Code of arbitrary distinctions." *Id.*

4

In this case, CitiBank's mortgage is junior to Wells Fargo's first mortgage in the amount of $147,638.51. Thus, it holds a "secured claim" for purposes of § 1322(b)(2) only if the value of Plaintiffs' home exceeds $147,638.51. To that end, CitiBank argues that Dalton's appraisal of $156,000.00 is a more accurate appraisal than Hunt's appraisal of Plaintiffs' home as it is based on comparable sales much closer in time to the date of trial on Plaintiffs' complaint. Section 506 provides no specific date on which the value of property should be determined. And there is no consensus among courts as to the proper valuation date of property when a debtor attempts to strip off a wholly unsecured mortgage. *Dean v. LaPlaya Invest., Inc.,* 310 B.R. 474, 477 (Bankr. E.D. Va. 2004); *compare Hegeduis v. Harris, N.A. (In re Hegeduis)*, 525 B.R. 74 (Bankr. N.D. Ind. 2015) (holding that the proper date is the date the petition was filed) and *Putman v. AM Solutions,; LLC (In re Putman)*, 519 B.R. 491, 498 (Bankr. N.D. Miss. 2014) (same) *with In re Williams*, 480 B.R. 813, 817 (Bankr. E.D. Tenn. 2012) (finding "date of confirmation more persuasive"); *Crain v. PSB Lending Corp. (In re Crain)*, 243 B.R. 75, 82 (Bankr. C.D. Cal. 1999) (holding that "the proper valuation date is the 'effective date of the plan'"); *Aubain v. LaSalle Nat'l Bank (In re Aubain)*, 296 B.R. 624, 636 (Bankr. E.D.N.Y. 2003) (adopting a "flexible approach" that considers various equitable factors in determining a valuation date).

In this case, the court need not address the timing issue. Dalton's appraisal does not include adequate deductions for expenses impacting the value of the Foxhill Property. As discussed below, even starting with Dalton's $156,000.00 appraisal figure, after appropriate deductions, the court finds the value of the Foxhill Property is less than Wells Fargo's first mortgage.

Dalton's appraisal includes an estimated $3,000.00 deduction for defective central air conditioning and soffits at the Foxhill Property, while Hunt estimated a cost of $4,000.00 for such repairs. Neither Dalton nor Hunt's cost estimates are based on estimates received from contractors in the appropriate fields. Given Hunt's extensive background in renovating homes, the court finds his additional $1,000.00 cost estimate more persuasive. The court also credits Hunt's testimony that the roof of the Foxhill Property is worn out and the carpeting "is shot," and that both negatively impact the value of the property in the amount of $4,000.00 and $3,500.00, respectively. Dalton testified that he did not view the roof because it was snow covered. And with respect to the carpeting, he testified that it was a "typical fourteen-year-old carpet," which the court finds is not inconsistent with Hunt's opinion that it is "worn out." With deductions from Dalton's $156,000.00 appraisal for the roof and carpeting and the additional $1,000.00 deduction for the

5

central air and soffits,[3] the value of the Foxhill Property even on the date of his appraisal is $147,500.00. This value is less than the $147,638.51 amount owing on the Wells Fargo mortgage, and results in CitiBank's mortgage having no positive value. CitiBank's mortgage is therefore wholly unsecured and may be avoided under the authority of *Lane*.

## II. Avoidance of Judgment Lien

Under 11 U.S.C. § 522(b)(1), Ohio has opted out of the federal bankruptcy exemptions established under 11 U.S.C. § 522(d). Ohio Rev. Code § 2329.662. Bankruptcy debtors like Plaintiffs domiciled in Ohio for a requisite period of time designated by Congress, 11 U.S.C. § 522(b)(3), are therefore entitled to claim exemptions allowed by Ohio law. Under Ohio law, a debtor is entitled to a homestead exemption currently in the amount of $136,925.00, effective April 1, 2016, based on the consumer price index. *See* Ohio Rev. Code § 2329.66(A)(1)(b) and (B).

The Bankruptcy Code, in turn, establishes grounds for avoiding judicial liens that impair an exemption to which a debtor is entitled. Specifically, § 522(f) provides as follows:

(1)    Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--

(A) a judicial lien . . .

A lien is considered to impair an exemption to the extent that the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property exceeds the value that the debtor's interest in the property would have in the absence of any liens. 11 U.S.C. § 522(f)(2)(A). It does not matter that the debtor has no equity over and above the creditor's lien. *See In re Jakubowski*, 198 B.R. 262 (Bankr. N.D. Ohio 1996) (determining the amount of the impairment by applying the mathematical formula in § 522(f)(2)(A) notwithstanding the fact that the first mortgage was greater than the value of the property). However, "a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens." 11 U.S.C. §522(f)(2)(B).

In this case, Plaintiffs are each entitled under Ohio Rev. Code § 2329.66(A)(1)(b) to claim an

---

[3] Although further deductions are included in Hunt's appraisal, the court is not convinced that they impact the value of the property.

exemption of $136,925.00 [4] in the Foxhill Property, which they use as their residence. As determined above, the value of the Foxhill Property is $147,500.00. Applying the impairment formula set forth in 522(f)(2) to the facts in this case, the exemption to which Plaintiffs are entitled is impaired to the extent that the sum of Wells Fargo's first mortgage and CitiBank's judgment lien plus Plaintiffs' exemptions exceed the value of the Foxhill Property if there were no liens on the property:

| | |
|---|---:|
| Wells Fargo 1st Mortgage: | $147,638.51 |
| CitiBank's Judgment lien | 48,571.00 |
| Exemptions ($136,925.00 X 2): | 273,850.00 |
| Total | $470,059.51 |
| Less the value of Debtor's unencumbered home: | 147,500.00 |
| Impairment: | $322,559.51 |

Because the $322,559.51 amount of the impairment under the statutory formula exceeds the $48,571.00 amount of CitiBank's judgment lien that Plaintiffs seek to avoid, CitiBank's lien is avoidable in full. *See Holland v. Star Bank. N.A. (In re Holland)*, 151 F.3d 547, 550 (6th Cir. 1998).

## CONCLUSION

Because the value of the Foxhill Property, Plaintiffs' residence, is less than Wells Fargo's first mortgage, CitiBank's second mortgage is wholly unsecured. Plaintiffs are therefore entitled to judgment on their claim seeking to strip off CitiBank's mortgage. Plaintiffs are also entitled to judgment on their claim seeking to avoid CitiBank's judgment lien on the Foxhill Property as impairing the homestead exemptions to which they are entitled. The court will enter a separate judgment in accordance with this Memorandum of Decision.

###

---

[4]The amounts of the exemptions allowed under § 2329.66 adjust at three year intervals starting in 2013. The Ohio Judicial Conference calculates and publishes the adjusted exemption amounts, which appear under Public Notices in the Register of Ohio, a publication of the Ohio Legislative Services Commission.